here from Mr. Sims Council first. May I please report? My name is Yolanda John. You can take off your mask. You don't have to if you don't come. If you want to, if you want to keep it on you. My name is Yolanda Jarman and I represent Mr. Jamin Simmons. This is a circumstantial evidence case where Mr. Sims was charged with conspiracy to sex traffic, a minor sex trafficking of a minor or aiding and abetting another to do so. In this case, we contend that the evidence does not support the convictions for sex trafficking, a minor in issues one and two. We address the points as to why. First of all, the key witness in the case was the minor herself, who Sims is accused of sex trafficking. We refer to her as Jane Doe. In this case, Jane Doe readily admit that it was Tabitha Manges, Gary Haynes and a Desmond Broussard that got her involved in sex trafficking. As a matter of fact, she had met Tabitha Manges through her. But doesn't Janet Doe link Sims to Jane Doe? Janet Doe does not link Sims to Jane Doe. Janet Doe's role in the case is that she is merely one of Mr. Sims' prostitutes. She testified that he was a pimp. She testified that she had no knowledge of Janet Doe's age and that she had no knowledge of Mr. Sims' association with Janet Doe whatsoever. I mean Jane Doe. Jane Doe. Jane Doe whatsoever. Yeah, but she testified that Sims, Janet testified that Sims told her to find Haynes a girl, a white girl. That is correct. The record bears that out. However, in this case, Sims was evidence in the record from any witness that Sims told Tabitha to find Gary Haynes, an underaged white girl. As a matter of fact, Tabitha herself testified that Sims did not tell her to find him, Gary Haynes, an underage white girl. He told him to find Gary Haynes, a white girl, because Gary Haynes wanted to be like the other men in the record, saying a lot about pimping white girls. It was actually Tabitha Maynes and Jane Doe herself who became involved in the sex trafficking without Sims. Tabitha had a prior relationship with Jane Doe's sister, who was actually 18 years old. And in the record, Tabitha also claims that she had no knowledge that Jane Doe was under 17. Jane Doe was reaching out to her via Instagram. There was no evidence that Sims reached out to Jane Doe via Instagram. No evidence that he knew her age or could have even found out her age via Instagram. Jane Doe said she had no communication with Sims. She didn't have any sex with Sims. She didn't get any money from Sims. Sims was not at the hotel when Haynes brought her in from La Grange the night that she was placed into the hotel. It was actually Gary Haynes that gave her the ID card. Sims had nothing to do with that. He was not even at the hotel. In fact, Jane Doe even testified that she was at a place called The Mansion with other people for only two hours. She never saw Sims there when she came into Houston. So there's actually... I understand this issue of the ID. So there is this evidence from Janet Doe that Sims got an ID and that Janet saw Jane Doe with that ID. But you argue that the ID she used was Amanda and the ID that Sims got was Monica, but Janet testified that she saw Jane Doe with the Monica ID. So whether that was what she used at the hotel or not, she got it from Sims. And why would Sims be giving a lady over 18 a fake ID? Janet did not testify that she saw Jane Doe with Monica's ID. Actually, Janet testified that she came into Monica's ID from another adult prostitute. Janet herself passed Monica's ID on to someone and it ended up in Sims' possession. But it was actually Gary Haynes who checked Jane Doe into that hotel with an ID that had to... that belonged to Amanda Garcia. So you have two separate IDs. One we know was in possession of Sims, but was not used at any motel to... as far as Jane Doe is concerned. The other, Amanda Garcia, which Gary Haynes used to check... What do you do with Janet's testimony that the day after they brought Jane Doe to the motel, Sims and Haynes brought Jane Doe to Janet to teach her the ropes about being a prostitute. Both of them came in Janet's room and delivered Jane Doe to Janet. What do you do with that testimony? The record, it shows, there is evidence that Mr. Sims was acting as a prostitute. However, in order for... to sustain the convictions for the conspiracy and the Jane Doe was a minor or acted in this reckless disregard of that. No, not necessarily. If he had a reasonable opportunity to observe her, that's all that's required. And again, what do you do with the testimony that Sims and Haynes brought Jane Doe to Janet's room to tell her to teach her the ropes? And Sims and Jane Doe and Janet were all in the same room. Jane Doe testified that when Sims entered the room, she positioned herself in a restroom near a mirror and that Sims had no opportunity to observe her. I don't think she testified that he didn't have an opportunity to examine her, to observe her. I mean, she didn't stay in the room long, but she was there when he came in. And for some small period of time, he did have a chance to look at her. Her testimony says that it was only momentarily and that he did not... That's right. It doesn't take very long to look at somebody. And that he didn't see, that he didn't observe her. And in our brief, we point out that in cases where the court did find that there was reasonable opportunity to observe, those defendants acted as pimps. They saw the minor victim over a series of days and had sex with her. So there are no cases where a sex trafficking of a minor victim was found and upheld. That would be a jury question, wouldn't it? Whether she was in the room long enough for him to observe her. But her testimony is that she removed herself to an adjacent bathroom. But she was there for some time. Some amount of time. I can't point to the record at this moment, but I believe her testimony is that when he came in, she moved herself into a room because it was none of her business and did not give him the opportunity to observe her. So, in sum, Sims contends that there's just not enough evidence to establish beyond a reasonable doubt counts one and counts two. And with the court's permission, I'd like to move to issue four. For those same reasons, there is no evidence in the record to support a finding that Sims was actually an organizer or a manager to justify the four points awarded to Sims for his role in the offense. Because the evidence shows that it was actually Gary Haynes, Tabitha, and Jane Doe that developed the conspiracy to bring her from LaGrange to Houston. She even testified that Gary himself eventually discovered her age, which led to the ID and had sex with her. But Sims did not. So there's no evidence here that he was actually the leader or organizer. In fact, Tabitha testified that Sims did not want Gary Haynes involved in being a pimp at all, because Gary Haynes was a student at Texas Southern University and he wanted him to take that course. Turning to the next issue, issue three, Sims contends that the court abused its discretion when it allowed tapes of rap videos into evidence here. We recognize that courts have held that rap videos and rap lyrics are admissible in court. However, Sims is arguing that the lyrics on the federal rule of evidence 401, 404, and 403, they presented a substantial danger of prejudice to the jury. Here, the rap videos, they speak of profanity, they speak of sex, promiscuity, prostitution, theft, misogyny, and white bitches and whores. So the argument is that the admission of these tapes impermissibly and prejudicially swayed the jury to render a guilty verdict for Sims. In those cases where the rap videos were admitted, Stuckey and Moore, that we incite to the brief, the courts held that those rap videos, although admissible, they were not prejudicial, even if not admissible because there was such overwhelming evidence of the defendant's guilt. But in the case of these videos, he's involved in them. This isn't something where maybe he just, you know, showed up for a second in the video. He's directly involved in the videos, and they have to do with pimping and prostitution, which is relevant here. And weren't they also relevant to the forced charge that he was acquitted of? The issue that we're arguing is not that they weren't relevant, that even if they were relevant, they were prejudicial. But let me focus specifically on the forced charge. He was acquitted of that, so we haven't talked about it. That's the third charge. But he was nonetheless charged with that, and that was what he was being tried for. And weren't these videos supportive of that? And that would weigh, when you're weighing prejudice, you weigh the relevance versus the harm. That would weigh in favor of putting them in because they involve force issues. And he was charged with a force crime, even though that's what he was acquitted of. Still, when you're talking about a trial, you're looking at what are the charges at the time, what is he being tried for, not what later he is appealing. And at that time, force was directly at issue. So why isn't that what makes it not unduly prejudicial? Actually, that is what makes it prejudicial because here, the government already had a live witness in the person of Janet Doe to attest that Sims was a prostitute. But here, he's also charged with sex trafficking. So if you look at the case as a whole and everything that he was charged with here, the evidence is prejudicial because sex trafficking of a minor is not the same as being a pimp. Those are two different crimes. So what about the force? You're not answering me on the force question. Like I said, I realize that's not a concern right now because he was acquitted, but the government was trying to prove it. And why don't those rap videos support that and that outweighs any prejudicial? Because there's no evidence in the video of force. In some of the rap videos and the other cases, they were on point and addressed the issue of violence as to that victim. In this case, Sims is not alleged as to the minor of forcing her or being violent against her. He was solely charged based upon her age. And in those videos, there's no information or lyrics regarding prostitution of a minor. And we believe the fact that the lyrics are so savory and so inflammatory and vulgar and referring to white bitches actually led to the jury being prejudiced against Mr. Sims. Because if you remove those videos from the equation, you're only left with Janet Doe's testimony that she voluntarily became a prostitute and Jane Doe's testimony as well as the officers and other investigative aiding officers that there's no evidence that Sims had anything to do with her being trafficked as a minor. Your Honor, I see that I'm running out of time. Thank you. Okay. You reserve time for a vote. Appreciate it. We'll hear from the government. Good morning and may it please the court. Audre Mayness on behalf of the United States. This court should affirm the convictions and sentence in this case. First, the district court correctly denied the defendant's Rule 29 motion because the evidence was sufficient to convict on both the conspiracy and on the substantive sex trafficking count. The district court also acted within its discretion in admitting the rap videos that diaried the defendant's life. And the court properly determined that the defendant was a leader in the criminal sex trafficking endeavor, thus justifying the four-level leadership enhancement. Do you want to address this Amanda versus Monica ID issue? I'm quite confused on that. Sure, Your Honor, and I'll do my best from what the record represents. So we know that when Jane Doe arrived at the hotel with Gary, Gary goes up to the second floor, and this is a hotel that has exterior facing doors, so she can see Gary go up to the second floor, go into a room, and retrieve the Amanda Garcia ID. She says he does this because he knows she's a minor. He brings it back down. She's able to rent a room for those couple days that she had her own room. The Monica ID is referred to by Janet, the adult prostitute. Janet testifies that she had found Monica's ID, had given it to Sims, and that later she sees Jane, the minor, with the ID. Now I don't know if it's the same ID and there was a transcription error or mispronunciation because the Amanda ID is also referred to as Anna at other points in the record. But whether it's the same ID or two separate— Amanda and Monica don't really sound alike to me. Amanda and Anna I could kind of see. I understand, Your Honor. But whether it's one ID or two IDs, here's what we know is happening. We have an ID that's circulating through the second floor room. The only person that we know that's staying on the second floor is Sims. That ID comes into the minor's possession so that she's able to rent a room. The adult prostitutes in this case don't use other people's IDs. We have the investigator Castro testifying that, no, they rent IDs under their own names, using their own IDs. And then we also have Janet Doe, who really doesn't have a stake in this at all and didn't want to really help Jane, the minor. Janet testifying that, oh, I had given this adult ID, Monica's ID, to Sims. Jane has it later in her possession. Why does Jane have an ID? Because the people involved in this conspiracy know or at least recklessly disregard Jane's age, and that includes Mr. Sims. Walk us through all the evidence of him being able to see her because, as Judge Davis pointed out, that would have been enough. Yes. On the reasonable opportunity. On the reasonable opportunity to observe. So we have two instances that Jane testifies to. One is she observes Sims on the second floor balcony at one point. She can see him, so the jury could reasonably infer that he could see her. But the bigger one is when he comes into the room that Jane and Janet are sharing and he has a conversation with Janet. Now, Jane testifies, oh, I removed myself back towards the bathroom area. Well, the jury was able to see pictures of this hotel room. It's an open room, two beds with an open sink area. The mirror and the sink are visible from the beds. It's not a large room. So she takes herself back because she's following what? And can't talk to another pimp. But Sims can see her. Sims can see that she's nervous. And then I would also say that Sims has an opportunity to observe her, maybe not looking at her when he's having the conversation between Gary and Janet about housing Jane, but he knows what's going on at this point. He's getting information that Jane is inexperienced. Jane doesn't know what she's doing. Jane hasn't made any money. So what does he do? He takes his gremlin, as Gary's referred to in the testimony, goes to one of his prostitutes that he has control over, Janet, and says, hey, Janet, you're going to house Jane. You're going to make her comfortable until she makes the money. You're going to, as Judge Davis said, teach her the ropes. And so these are all opportunities that Sims has to observe Jane, to see that she's inexperienced. We also know that Jane says, hey, Gary and Tabitha. You could be an inexperienced prostitute over 18. You could be, Your Honor, but the testimony that we have from the two other prostitutes in this case, Tabitha and Janet, they started very young. Tabitha is only 22 when she testifies at trial, and she's been with Sims for several years at this point. Janet testified that she started prostituting at 16, and these prostitutes have come to Sims after they've had some experience elsewhere. Tabitha came from Austin. Janet came from Miami. All of a sudden we have this new girl on the scene, inexperienced. We know that she is the friend of Tabitha's younger sister. Again, Tabitha's already pretty young. So you could have that, but would it cause a reasonable person to question whether she might be 18 or not? Absolutely. And that's what this court said in FIA, is that if they're 18, look young. Yes, and the jury had the opportunity to see that. She testified for a full day. So she looked young. She wasn't 17 at the time she testified, but they also got to see pictures of the night she was recovered from the hotel. So they had all of this opportunity to observe, to see how Jane acted, how she looked. So let me ask you this on this reasonable observation. What if Jane, at age 17, had looked 25? I mean, there are teenagers who look quite a bit older than they are. There's also teenagers who look quite a bit younger, same with adults. But let's say that everybody agrees she looked 25 when she was 17. Would that have supported—and then he saw her. Would that have supported a reasonable review there? I think it would depend, Your Honor, but I still think there are these other facts, these IDs floating around, that Jane needs an ID because she doesn't have one of her own. That's something that would trigger a red flag. I think the fact that the two co-conspirators know that Jane's only 17 triggers a red flag, and I know we can't necessarily impute that knowledge on Sims. But let me also address the argument that Sims didn't want Gary involved in pimping. That's not the case. Tabitha testifies repeatedly that, yes, Gary was a football player, but as the months went by, before he got Jane, he was getting more and more into the streets. Sims wanted him to, quote, come along with their lifestyle. And so Sims is supporting it. Sims tells Tabitha, find Gary a white girl. Why is Sims so supportive and then all of a sudden upset when Gary goes to get Jane? Because Sims likely knows that she's 17, and the jury can infer knowledge from that testimony. But if he's upset about that, then how is he a co-conspirator in it? So let me ask this. Let's say he told somebody, go get Gary, you know, girl, and meant an adult, and then they show up with someone who's clearly under 18, or at least arguably. What is he supposed to do at this point to avoid being a co-conspirator? Tell Gary to take her back. Tell Gary, no, I have nothing to do with this. Certainly don't tell Gary and Janet, hey, host her and teach her the ropes. So even if he wasn't a conspirator up until that point, as soon as he approached Janet and said, take her in, you know, he has control over Janet, take her in, show her how it's done, he's in on the conspiracy at that point. But what are the five people that was led by Sims under the? Under the sentencing enhancement, Your Honor. So it would be Sims, Gary, Tabitha, Janet, and then Desmond Broussard, who's named in the indictment. He was the driver, he was who drove Gary to go pick up Jane in LaGrange. So certainly those five are. Is that the only involvement of the driver? That is all that the record shows, Your Honor. How many prostitutes was he running? I know four from the record. There's Janet and Tabitha, and then there's also Cassie and Kitty, but there's a suggestion that he's had more over the years. But at the time of his arrest and then while he's out on bond, he certainly has those four prostitutes under his control. And Cassie was also arrested the night that they showed up at the hotel. So, Your Honors, the evidence is certainly more than sufficient for a jury to conclude that Sims, even if he didn't know, he recklessly disregarded. And as this court has said, there's an overlap, had a reasonable opportunity to observe that Jane was underage. And for that reason, we'd ask that you affirm on those— Is it critical to your case that the driver be one of the co-conspirators? Or one of the people that would be in—would he have to be a co-conspirator to be one to come under the leadership of Sims? I believe it is that he needs to participate in the criminal endeavor, but he doesn't need to be charged with it. And he was charged. He's named in the indictment, but it was a fugitive at the time of trial. But I also, Your Honor, I think that you couldn't reasonably include under the umbrella possibly a couple of those other adult prostitutes, because in the PSR it talks about at least Cassie being involved in interacting with the minor as well. PSR didn't name the five people, I don't think. I don't believe it did. If there's no other questions on the sufficiency points, I'll address the videos. What did you think of my question of your counsel opposite about the issue of the rap videos supporting the forced charge? Your Honor, actually, that is what the government argued in the pretrial proceedings, is that the reason we wanted to admit these videos was to support sex trafficking by force of an adult victim. And the videos do show force, and that's why it's not just the lyrics that were relevant, but the actual visual depictions. That's relevant here on considering this whole issue on appeal, because even though he was acquitted, in fact, that kind of shows the rap videos didn't harm him. Even though he was acquitted, the reality is at the time of trial he hadn't yet been acquitted, and so they have to put on evidence, you all, the government has to put on evidence. If it fails, it fails. And so the rap video should be analyzed not just on the counts that are before us now, but all the counts that were before the jury. Absolutely, Your Honor. I completely agree. How much relevance does the rap video have to the forced charge? In the rap video, the men are brandishing weapons. They're openly flaunting weapons, and then that's supported by testimony. These guys always had weapons. Sims always had a weapon on him. And so that shows that there's some show of danger for these adult women as well as for the minor victim. So on the force point, they have the guns, they have the very direct lyrics, commoditizing women, selling women of all flavors. And so that's relevant to the forced charge. And to your point, Judge Haynes, this shows that the videos were— the admission of videos was harmless, even if it was somehow an abuse of discretion, because the jury didn't blindly convict on all three charges. They were very deliberate. They went through, and on the jury form, the jury had the option on the minor count. Was it because she was a minor, or was it because it was by force? They only checked—it says, check all that apply. They only checked the minor box. They acquit on the prostitution by force of an adult charge. So again, to the extent these are an abuse of discretion to admit them, which we don't believe they are, Sims appears and stars in them. He sings about specific aspects of his life. I got a girl out of Austin. He's talking about Tabitha. He tells Tabitha that. The guns and the money that appear in the videos aren't just props. These are real life. This is Sims' gun. This is the money that Sims has earned from prostitution proceeds. Tabitha testifies to that. And so then when he talks about sweating hoes and selling bitches of all flavors, he's not just making an artistic expression. He's talking about, this is how I make my money. And that's why they were relevant here. When you sing about pimping and prostitution, and you're brought up on pimping, prostitution, and sex trafficking charges, those songs are relevant. But their argument is, but it wasn't about minors. It was just about women. The details in the music videos don't have to exactly match the details of the crime. And some of the other circuits have talked about that in their cases. It may be a degree or two removed, but it's still absolutely relevant. And again, on the forced charge, that was an adult victim. So the videos talking about prostituting women certainly apply to that. Well, the thing is, there's a lot of other. I mean, your whole case was based on evidence that he was a pimp and prostituting women. So why did you need the videos to show that? Your Honor, again, and I go back to the forced charge, we had only the testimony of Janet on that point. And that needed to be bolstered by showing these videos. This man uses guns. He commoditizes women. And that applies in real life as well. All right. And on the final point, on the sentence enhancement, I think we've touched on it. Again, there were five participants. And there's no question that he's a leader organizer. He has complete control over Tabitha. He has this young man, Gary, who looks up to him. Sims tells Tabitha, find Gary a white girl. And then, again, he directs another one of his prostitutes, Janet, to house Janet, make her comfortable, and show her the ropes. Those facts more than plausibly support the leadership enhancement here. For those reasons, Your Honor, we'd ask that you affirm in its entirety. Thank you. Thank you for your argument. Now I'll hear the rebuttal. Thank you, Your Honor. First, I would like to address the court's question regarding the two IDs. The record of citations on this issue, on the record on appeal, page 907-908, 980-981, 1155-1156. There were two IDs discussed at the trial. Janet Doe, the adult prostitute, she testified that one of her friends, who was Monica, who was also a prostitute, left an ID in her room. She took Monica's ID and gave it to Sims. That's record on appeal, 1155-1156. She testified that she doesn't know who gave Monica's ID to Jane Doe, and there was absolutely no evidence in the record that Sims gave Monica's ID to Jane Doe. She also testified— You mean have the ID? Yes. Monica— Not the person. I just want to clarify that Monica was not one of Sims' prostitutes. No, no. What I'm trying to say is the evidence is that Sims had the Monica ID, then Jane had it. Isn't that some evidence that Sims gave it to Jane? It could be evidence that Sims had the ID, but we also know in the record that Jane spent time at that mansion with Gary for a couple of hours, so there's no evidence linking Sims to giving her the ID, and if the jury assumed that, then that would be very attenuated evidence because there's no other testimony linking Sims to that ID. And also, I want to address the issue of reasonable— whether Sims had a reasonable opportunity to observe Jane Doe. That is record on appeal, page 970-971. What Jane testified, she saw Sims going outside and walking around a room on the second floor. She looked into the room. She never went in that room. She walked away, and she didn't hear any of the conversation on pages 970-971. What about Janet Doe? Jane Doe tries to diminish Sims' involvement, but Janet Doe gives it a little more umph. Why wouldn't the jury believe her? Well, Janet Doe actually testified that when Sims came in, he asked her to help her because she wasn't making money. She does not testify that Sims had a reasonable opportunity to observe her. She says that Jane Doe actually moved to the back of the room, and she couldn't say whether Sims saw her or not. What about this argument that counsel opposite made about this is a small room, and so, you know, this is actually a huge room, but if Judge Davis walked a little further down there, I could still see him. Well, there's also evidence in the record that in the pimp culture, the prostitutes are not allowed to look at the pimps or to participate in any conversation. They're not allowed to look at the prostitute. But in this case, she removed herself so that— According to counsel opposite is walking back a few feet in a small room. I mean, and again, if you're just trying to be respectful, you could kind of stand behind somebody, but they could still see you. Yes. So if you're doing this sort of, quote, respect in a prostitution world, moving a few feet back does not prevent him from being able to have a reasonable opportunity to see her. Well, I would like to turn on that point. I would like to turn the court's attention to fear that we discussed on my reply brief, page six, and Jackson and O'Neill, reply brief, page five and six. In those cases where courts, including the Fifth Circuit, have held that there was a reasonable opportunity, the defendant was the pimp, had sex with the minor, and was around the minor a considerable amount of time. I see that my time has expired. If there are no further questions, Your Honor, we're asking you to reverse the conviction and vacate the sentence. Thank you very much for your argument, and I notice that you're a court-appointed attorney. We appreciate your acceptance of the appointment. We appreciate both sides' arguments, and the case is now under submission. You're welcome.